## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DWIGHT HORTON**

**VERSUS**

**RICKY DEAN FISHER, ET AL.**

**CIVIL ACTION**

**NO. 19-272-JWD-EWD**

### RULING ON DEFENDANTS' DAUBERT MOTION IN LIMINE TO EXCLUDE DR. JACK LEIFER

Before the Court is the *Daubert Motion in Limine to Exclude Dr. Jack Leifer* (Doc. 66) ("*Motion*") brought by defendants Transport Risk Solutions Risk Retention Group, Inc. ("Transport Risk") and KLLM Transport Services, LLC ("KKLM") (collectively "Defendants"). It is opposed by plaintiff Dwight Horton ("Plaintiff" or "Horton"). (Doc. 69 and Doc. 69-1.) Defendants filed a reply brief. (Doc. 74.) The Court has carefully considered the law, facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is denied.

**I.    BACKGROUND**

This case arises out of a motor vehicle accident which occurred on December 7, 2017. (Doc. 1-4.) According to Plaintiff, defendant Ricky Dean Fisher,[1] driving a KLLM truck, made a wide left turn from the right-hand lane forcing Plaintiff off the road where he crashed into a tree stump. (*Id*. at 3, ¶ 6.) According to Defendants, "[t]his is a minor motor vehicle accident" and "Defendants contest the nature and extent of damages claimed by plaintiff. . . ." (Doc. 66-1 at 1; *see also* Doc. 16 at 2.)

---

[1] For reasons which are unclear, defendant Ricky Dean Fisher, the driver of the KLLM truck (Doc. 78 at 3, Established Fact 4) which allegedly caused the accident, did not join in this motion.

1

Plaintiff and Defendants each hired an expert to analyze the collision and the impact forces involved. Plaintiff hired Dr. Jack Leifer, a mechanical engineering professor, to provide his opinions "regarding both [the] collision between a Chevrolet Express Van and a large tree stump, as well as the methods and conclusions of a report . . . authored by Defense Consultant Charles E. Bain, B. Eng., M.D . . . ." (Doc. 69-5 at 1.) Both sides have filed *Daubert* motions challenging the other's expert. (Doc. 69 and Doc. 67.)

## II.  SUMMARY OF ARGUMENTS OF THE PARTIES

Defendants move to exclude Leifer's testimony for three reasons: first, he "is not qualified to render opinions in the field of accident reconstruction. . . ." (Doc. 66-1 at 3; *see also id*. at 5-6); second, his opinions "are not consistent with the governing legal standards for the admissibility of expert testimony," (*id*. at 3), and "[are] not based on sufficient facts and data and lack[] a reliable methodology," (*id*. at 6–7); and third, his report "inappropriately criticizes Dr. Bain and [is] irrelevant and not helpful to the trier of fact" (*id*. at 9–10).

Plaintiff responds that Leifer is well qualified and has "[c]onsulted as an expert witness in crash analysis for over 14 years." (Doc. 69-1 at 8–9). He points to Leifer's multiple degrees and teaching positions. (*Id*.) As to his methodology, Plaintiff maintains that it is accepted and disagrees that Leifer's opinions are not based on peer-reviewed publications, pointing the Court to those attached to Leifer's report. (*Id*. at 11–12.) Regarding the appropriateness of Leifer's criticism of Bain, Plaintiff argues that the criticism is "supported by direct quotations from peer-reviewed papers, which *in many cases were listed by Dr. Bain himself*. . . ." (*Id*. at 18.)

In their reply, Defendants re-urge their previous arguments and point to their expert's criticism of Leifer's methods and conclusions. (Doc. 74 at 3.)

### III. STANDARD REGARDING EXPERT TESTIMONY

Pursuant to Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met. As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997) (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

3

Defendants' motion is a *Daubert* challenge. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993). When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id.* "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.' " *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:
>
> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997) (internal citations omitted).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the

4

nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

Cases following *Daubert* have expanded upon its original factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g., Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.' " *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 advisory committee note to 2000 amendment). Further, as explained in *Scordill v. Louisville Ladder Grp.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."

No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

### IV.    DISCUSSION

#### A. *Leifer's Qualifications*

5

Defendants' contention that Leifer is not qualified to testify as an accident reconstruction or crash analysis expert borders on the frivolous. Leifer's curriculum vitae can be found in the record at Doc. 69-20. Leifer has a BS degree in Mechanical Engineering from Massachusetts Institute of Technology (Doc. 69-20 at 1), a Masters' Degree in Mechanical Engineering from the University of Texas, (*id*.), and a PhD in mechanical engineering, also from the University of Texas, (*id*.). He has been an Assistant Professor of Mechanical Engineering at the University of South Carolina – Aiken, and University of Kentucky, Padukah Campus. (*Id*. at 1–2.) He is currently a Tenured Associate Professor of Mechanical Engineering at Trinity University in San Antonio, Texas. (*Id*. at 1) He is a licensed professional engineer in the State of Texas. (*Id*. at 8; Doc. 69-4 at 1.) He has authored or co-authored 15 peer-reviewed research publications, (*id*. at 3-5; Doc. 69-5 at 1), at least two of which deal with issues relevant to the present case, (Doc. 69-4 at 2.) He has been consulted as an expert witness in crash analysis for over 14 years and testified at trial or deposition on these issues some 150 times, (Doc. 69-4 at 1; Doc. 69-5 at 1), never being disqualified from testifying (Doc. 69-4 at 1.)

Ignoring three degrees in mechanical engineering from two prestigious university engineering programs and his 14 years of experience, Defendants challenge Leifer's expertise because he has taken no formal accident reconstruction courses and is not certified as an accident reconstruction expert. (Doc. 66-1 at 6.) Defendants point the Court to no authority holding that either is required for qualification as an expert witness in this field. Defendants cite no cases in which Leifer failed to qualify as an expert witness or has been limited in his testimony. Indeed, Leifer represents he never has. (Doc. 69-4 at 1.) Therefore, the Court rejects Defendants'

6

challenge on Leifer's qualifications in accident reconstruction and crash analysis and finds him sufficiently qualified in this area.[2]

Defendants argue Leifer concedes he is not a "biomechanic" (Doc. 66-1 at 6) and yet "offers biomechanical opinions . . . [and] opinions on injuries and injury risk in motor vehicle collisions." (*Id.*) Defendants do not quote or cite Leifer's statements, testimony or opinions about which they are complaining. (*Id.*) Plaintiff insists Leifer is not being called to give biomechanical engineering opinions but rather to criticize the basis for Bain's "use of his calculated change speed for the plaintiff's van (less than 4 mph) as a metric for evaluating whether injury can occur." (Doc. 69-1 at 10.) In his affidavit, Leifer himself denies he is giving biomechanical testimony and explains:

> Rather than offer opinions on *injury* and *injury risk*, my report critiques Dr. Bain's use of his calculated change in speed for the plaintiff's van (less than 4 mph) as a metric for evaluating whether injury can occur. Two of the papers I've listed (Tsoi and Gabler and Allen et al. (also cited by Dr. Bain)) specifically state the change in vehicle speed during a collision is not a reliable metric for determining whether someone has been injured. Furthermore, I believe that a third paper cited - - and co-written by Dr. Bain (Funk, Cormier, Bain et al.) -- is biased, because the volunteers used to "prove" the harmlessness of 'everyday activities' (purportedly similar to the forces experienced by the Plaintiff in the subject collision) were employees of Biodynamics Research Corporation (BRC), the company also employing Dr. Bain. **These are not opinions on injury or injury risk; rather, they're opinions (based on peer-reviewed literature) on metrics used by Dr. Bain – including a paper written by Dr. Bain himself.**

---

[2] It bears mentioning that university degrees are not necessary in order to be qualified as an expert accident reconstructionist since such qualification can also be based on experience and training. *See, e.g.*, *Byrd v. Allstate Prop. & Cas. Ins. Co.*, No. 16-563, 2018 WL 4693812, at *4 (M.D. La. Oct. 1, 2018) (deGravelles, J.). The Court also notes that while Leifer appears well qualified as an accident reconstruction expert, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson v. Bioremedi Therapeutic Sys., Inc.,* 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)).

(Doc. 69-4 at 3.)

In their reply memorandum, Defendants fail to respond or address this issue at all. It is clear to the Court that Defendants' argument lacks merit and rejects same.

### B. *Methodology and Foundation*

Defendants argue Leifer's opinions "are not consistent with the governing legal standards for the admissibility of expert testimony," (Doc. 66-1 at 3), and "[are] not based on sufficient facts and data and lack[] a reliable methodology," (*id*. at 6 -7). Defendants' charge specifically that Leifer's "opinions are not based on [any] peer-reviewed studies or any other, reasonable scientific studies," (*id*. at 3), and that "Dr. Leifer conducted no independent testing or analysis [but] merely critiqued Dr. Bain," (*id*. at 7). Even a cursory reading of Leifer's report shows that these charges are unfounded.

In the first sentence of Leifer's report, he makes clear that he is doing a crash analysis of the subject accident as well as a critique of Bain's "methods and conclusions." (Doc. 69-5 at 1.) After listing the materials reviewed and summarizing background information gathered from those materials, Leifer goes through what he describes as an "Analysis of Chevrolet/Stump Impact". (*Id*. at 3–6.) Using data from the National Automotive Sampling System (NASS) which is administered by the National Highway Traffic Safety Administration (NHTSA), he summarizes the results of his analysis as follows:

> Calculating the incoming speed of the van as it hit the tree stump was accomplished by using the estimate for energy dissipation discussed in the previous section, as well as the weight of the van specified on p. 5 of the Bain report (6051 pounds) plus 180 pounds for Mr. Horton. Using these estimated values and ranges, the pre-impact speed of the van as it hit the tree stump was calculated to range between 7.6 – 7.9 mph. Using an impact duration of 0.125 seconds [Ivory], this corresponds to an average impact force ranging between 17260 – 17945 pounds.

8

(Doc. 69-5 at 6.)

Thus, despite Defendants' bald assertion to the contrary, it is clear that Leifer did an analysis of vehicle's pre-impact speed and force at impact and utilized peer reviewed literature to support it. The Court takes no position, of course, as to the correctness of Leifer's analysis or conclusions. That issue is for the jury. *Gen. Elec. Co. v. Joiner*, 522 U.S. at 154, (Stevens, J, concurring in part, dissenting in part) ("*Daubert* quite clearly forbids trial judges to assess the validity or strength of an expert's scientific conclusions, which is a matter for the jury.")

The question for the Court is not whether the expert's conclusions are correct but whether the expert used a valid methodology with a sufficient foundation. Much of Defendants' argument is aimed at Leifer's specific conclusions, and they support their criticism with the opinion of their own expert. (Doc. 66-1 at 8–9.) These objections go to the weight, not admissibility, of the evidence and are best tested by vigorous cross examination at trial.

Defendants next allege that Leifer's "opinions are not based on any peer-reviewed studies or any other reasonable scientific studies." (Doc. 66-1 at 3.) This is clearly incorrect. On page two of his report, he writes: "In addition to the materials provided, I've used information from various commercial and government databases, as well as from other sources. These have either been listed in the *References* section or appended to the report, as appropriate." (Doc. 69-5 at 2.) There are 13 articles listed in the References section of his report, (*id*. at 14–15), and additional articles attached to the report, (*id*. at 69-6 to 69-19). Two examples of Leifer's use of peer reviewed literature are found in the sections of his report, (Doc. 69-5 at 6), and affidavit, (Doc. 69-4 at 3), quoted above. (*See also* Doc. 69-4 at 3, ¶ 6.)

In conclusion, the Court rejects this part of Defendants' motion and finds that Leifer's methodology and foundation are sufficient.

## V. RELEVANCE AND HELPFULNESS TO THE TRIER OF FACT

In their final attack, Defendants argue that "Dr. Leifer's report and testimony should be excluded on the basis that it inappropriately criticizes Dr. Bain's report, and would not be helpful to the trier of fact." (Doc. 66-1 at 9 (citing *Arnold v. Pfizer, Inc.,* 970 F. Supp. 2d 1106, 1122 (D. Or. 2013) ("To the extent that Freeman expresses his opinion as to the relative value of Batura's conclusions, or provides gratuitous negative characterizations of Batura's work, that content is hereby stricken.")).) First, the main issue about which Leifer and Bain disagree, the force of the impact, is obviously and highly relevant. If there are errors in the analysis of either expert, it is relevant. Ironically, while Defendants attempt to exclude Leifer's testimony because he is critical of Bain's analysis, Defendants point this Court to Bain's criticism of Leifer in support of their motion. (*See, e.g.*, Doc. 66-1 at 8.) Both criticisms are relevant and will help the trier of fact.

The second prong of Defendants' attack is that Leifer's criticism is "inappropriate" and, by citing *Arnold*, 970 F. Supp. 2d at 1122, suggests that Leifer expresses an opinion as to the "relative value of [Bain's] work" and "provides gratuitous negative characterizations" of it. The Court has carefully reviewed Leifer's original report (Doc. 69-5) as well as his affidavit (Doc. 69-4) and finds that, while he makes a detailed and forceful critique of Bain's analysis and conclusions, this critique does not purport to opine as to the "relative value" of Bain's opinions, does not "provide[] gratuitous negative characterizations" and is not "inappropriate". The Court rejects this final part of Defendants' motion.

## VI. CLOSING THOUGHTS

It troubles the Court that counsel for Defendants cavalierly makes categorical assertions to this Court which are demonstrably incorrect. He asserts that Leifer's "opinions are not based on any peer-reviewed studies or any other reasonable scientific studies," (Doc. 66-1 at 3) when

10

as noted and quoted above, such is not the case. He states Leifer conducted no independent analysis but "merely critiqued Dr. Bain," (*id*. at 7) when, as discussed above, such is clearly not the case, Leifer calculating speed and force at impact. The Court understands an attorney's duty to zealously advocate on behalf of his or her client but there is a line between this duty and a lawyer's duty of candor to the court. To enforce this distinction, the Court urges counsel for Defendants to re-read Federal Rule of Civil Procedure 11 and to review *In re Grodner*, 587 F. App'x 166 (5th Cir. 2014).

## VII. CONCLUSION

For the foregoing reasons, Defendants' *Daubert Motion in Limine to Exclude Dr. Jack Leifer* (Doc. 66) is **DENIED**.

Signed in Baton Rouge, Louisiana, on August 26, 2021.

                                            **JUDGE JOHN W. deGRAVELLES**
                                            **UNITED STATES DISTRICT COURT**
                                            **MIDDLE DISTRICT OF LOUISIANA**