## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DWIGHT HORTON**

                                  **CIVIL ACTION**

**VERSUS**

                                  **NO. 19-272-JWD-EWD**

**RICKEY DEAN FISHER, ET AL.**

### RULING ON PLAINTIFF'S DAUBERT MOTION IN LIMINE TO EXCLUDE DR. CHARLES BAIN

Before the Court is the *Daubert Motion in Limine to Exclude Dr. Charles Bain* (Doc. 67) ("*Motion*") brought by plaintiff Dwight Horton ("Plaintiff" or "Horton"). Defendants Transport Risk Solutions Risk Retention Group, Inc. ("Transport Risk") and KLLM Transport Services, LLC ("KLLM") (collectively, "Defendants") oppose the *Motion*. (Doc. 71.) Plaintiff filed a reply brief. (Doc. 77.) The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is denied in part and deferred in part for hearing to be set by the Court.

### I.    BACKGROUND

This case arises out of a motor vehicle accident which occurred on December 7, 2017. (Doc. 1-4.) According to Plaintiff, defendant Rickey Dean Fisher, driving a KLLM truck,[1] made a wide left turn from the right-hand lane forcing Plaintiff off the road where he crashed into a tree stump. (*Id*. at 3, ¶ 6.) According to Defendants, "[t]his is a minor impact motor vehicle accident", and "Defendants contest the nature and extent of damages claimed by plaintiff . . . ." (Doc. 66-1 at 1; *see also* Doc. 16 at 2.)

---

[1] For reasons which are unclear, defendant Rickey Dean Fisher, the driver of the KLLM truck, (Doc. 78 at 3, Established Fact 4; Doc. 71 at 1), which allegedly caused the accident, did not join in Defendants' opposition to this *Motion*.

Plaintiff and Defendants each hired an expert to analyze the collision and the impact forces involved. Defendants hired Charles E. Bain, M.D. ("Bain") in the area of "vehicle dynamics, occupant kinematics, biomechanics, and medicine." (Doc. 71 at 2.) He estimated the vehicle's speed to be between 3.5 and 4.7 mph and the delta-v at between 4.7 and 6.4 mph. (Doc. 71-1 at 6–7.) As to Plaintiff's injuries, Bain opined:

> Mr. Horton was involved in very low severity frontal motor vehicle collision. He was not subjected to forces or accelerations that would cause injury. Mr. Horton may have been startled by the event and/or suddenly braced resulting in reflexive muscle strains. Any symptoms that he had would have abated within days regardless of medical treatment rendered. None of Mr. Horton's medical care was causally related to the subject accident.

(*Id*. at 13.)  Plaintiff's "low back was not subjected to any appreciable lumbar accelerations or forces. As such, there was no mechanism to injure his low back structure in this event." (*Id*. at 8.)

Plaintiff hired Dr. Jack Leifer ("Leifer"), a mechanical engineering professor, to provide opinions "regarding both [the] collision between a Chevrolet Express Van and a large tree stump, as well as the methods and conclusions of a report . . . authored by Defense Consultant Charles E. Bain, B. Eng., M.D. . . . ." (Doc. 69-5 at 1.) Both sides have filed *Daubert* motions challenging the other's expert. (Doc. 66 and Doc. 67.)

## II.    SUMMARY OF ARGUMENTS OF THE PARTIES

Plaintiff challenges Bain's opinions on three main grounds. First, he argues that Bain lacks the qualifications necessary to render his opinions. (Doc. 67-1 at 1–2; *id*. at 3–4). Second, Plaintiff maintains that Bain "does not rely on reliable expert methodology", (*id*. at 3), and third, relying primarily on his own expert's criticism of Bain's report, attacks Bain for making errors in reaching his conclusions, rendering the foundation for and reliability of his opinions insufficient, (*id*. at 4–8).

2

Defendants respond that Bain is well qualified, holding a nuclear engineering degree, a medical degree and certification by the Accreditation Committee for Traffic Accident Reconstruction. (Doc. 71 at 2, 4–6.) They also emphasize Bain's eight years as a family medicine practitioner and seventeen years performing accident reconstruction. (*Id.* at 5.) As to his methodology and foundation, Defendants address the merits of Plaintiff's (and Leifer's) criticism, (*id.* at 6–12), but, in any event, maintain that "Plaintiff's criticism of Dr. Bain's technique goes to the weight of Dr. Bain's testimony, and is not grounds for exclusion", (*id.* at 7). In support of their position, Defendants attach a number of rulings in which courts denied *Daubert* challenges to Bain's testimony. (Doc. 71-1 at 79 *et seq*.)

In his reply, Plaintiff repeats many of his original arguments but also points the Court to cases allegedly demonstrating "Bain's history of being excluded for lack of qualification, employing unreliable methods, and relying on insufficient facts and data." (Doc. 77 at 2, 3–6 (citations omitted).)

## III.    STANDARD REGARDING EXPERT TESTIMONY

Pursuant to Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met. As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171-BAJ-SCR, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010) (citing, *inter alia*, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997) (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." (internal citations omitted)).

Defendants' motion is a *Daubert* challenge. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id.* "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.' " *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has

4

been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability–of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins*, 121 F.3d at 988–89 (internal citations omitted).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

Cases following *Daubert* have expanded upon its original factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.' " *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 advisory committee note to 2000 amendment). Further, as explained in *Scordill v. Louisville Ladder Group.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the

> system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."

No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

## IV.    DISCUSSION

### A.  Qualifications

Like Defendants' attack on Leifer's qualifications, the Court finds that Plaintiff's attack on Bain's qualifications is not a serious one. Plaintiff complains that Bain's engineering degree is in the unrelated fields of chemistry and nuclear science, that he isn't a licensed professional engineer and that he hasn't treated patients in many years. (Doc. 67-1 at 1–2; *see also* Doc. 77 at 6–7.) These are not grounds for disqualification but rather go to the weight of his testimony. "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) The Court has carefully reviewed Bain's qualifications and finds they are sufficient.

### B.  Methodology, Foundation and Reliability

Plaintiff complains about Bain's methodology, but he concedes Bain uses "the well accepted damage-based methodology to calculate speeds associated with the subject collision",

(Doc. 67-1 at 4), and, for his opinions regarding injury severity and causation, principles of

Injury Cause Analysis (ICA), (*id*. at 7). Plaintiff's attack does not question the reliability of these

two methodologies but rather, argues that significant errors in his application of same render the

opinions unreliable. (*Id*. at 4–8.)

> "As a general rule, questions relating to the bases and sources of an
> expert's opinion affect the weight to be assigned that opinion rather
> than its admissibility and should be left for the jury's consideration."
> *United States v. 14.38 Acres of Land More Or Less Situated in
> Lefore County, Miss.*, 80 F.3d at 1077 (quoting *Viterbo v. Dow
> Chemical Co*., 826 F.2d 420, 422 (5th Cir. 1987)); *see also Imperial
> Trading Co. v. Travelers Property Cas. Co. of America*, 2009 WL
> 2356292 at *3 (E.D. La. July 28, 2009). Furthermore, "[m]atters left
> for the jury's consideration include the alleged miscalculations,
> erroneous assumptions, and inconsistencies that plaintiffs object to."
> *Imperial Trading*, 2009 WL 2356292 at *3 (citing *Southwire Co. v.
> J.P. Morgan Chase & Co*., [528] F. Supp. 2d 908, 935 (W.D. Wis.
> 2007)).

*Byrd v. Allstate Prop. & Cas. Ins. Co*., No. 16-563-JWD-EWD, 2018 WL 4693812, at *5 (M.D.

La. Oct. 1, 2018).

As to the alleged errors in Bain's calculation of speed and force of impact, the Court

finds these go to the weight and not the admissibility of the evidence and are best left for jury.

Plaintiff of course may challenge these opinions on cross examination and with the testimony of

his own expert. The Court therefore denies Plaintiff's motion as to these opinions.

There is one group of Bain's opinions, however, that require closer attention: those which

deal with the alleged lack of injury suffered by Plaintiff. In addition to Plaintiff's specific attacks

on Bain's opinions regarding speed and force of impact, Plaintiff argues that a critical piece of

information was lacking in order for Bain to reach a valid injury/causation conclusion based on

the ICA: the position of Plaintiff's body at the time of impact. "We have no idea exactly how Mr.

Horton was sitting in his vehicle [a]s it swerved (on a slick roadway) to avoid the semi-tractor –

before driving into the tree stump." (Doc. 67-1 at 8 (emphasis removed).) According to Plaintiff, that information is required to complete step 2 of the ICA (occupant kinematics) and is necessary according to Bain's own supporting literature. (*Id.*)

Defendants respond by pointing the Court to Bain's affidavit wherein he maintains, without citation or reference, that although "knowing the seated position (driver vs passenger), seatbelt positioning, body positioning with respect to being out of position (i.e. leaning forward, feet on top of the dash, seatback laid back to sleep) are important to know" in "serious collisions", body position is "not important" in low speed collisions "because forces are low and will not make a difference from an injury potential perspective whether they are sitting upright, slouched, leaning with their elbows or armrests, etc." (Doc. 71-1 at 76–77.) Furthermore, Defendants state that Bain spoke to Plaintiff by telephone who described his position to him: "Horton stated that he had steered to the left, his right foot was on the brake and that he had braced for the impact." (*Id.* at 77; *see also id.* at 64.)

The Court notes that Bain's one-line description of Horton's "position" based on his "more than thirty minute[]" telephone call with Plaintiff[2] doesn't describe his position, i.e., was he upright leaning back against the seat, upright leaning forward, leaning to the right or left? This dearth of information is consistent with Plaintiff's statement that "[w]e have no idea exactly how Mr. Horton was sitting in his vehicle . . . " (Doc. 67-1 at 8.) In a letter to Defendants' counsel describing Bain's conversation with Horton, Bain adds, "[Horton] usually drives with two hands on the steering wheel," (Doc. 71-1 at 64), suggesting Horton wasn't sure where his hands were at the time of the collision.

---

[2] Doc. 71-1 at 64. Neither Plaintiff nor Defendants state whether a transcript was made of the conversation. One was not provided to the Court.

This is not the first time Bain's opinions have been challenged in a low-speed motor vehicle collision case based, in part at least, on his lack of knowledge about the occupant's position inside the vehicle. The Louisiana Supreme Court recently reversed the court of appeal and reinstated the district court's ruling to exclude Bain's testimony. *Blair v. Coney*, 2019-00795 (La. 4/3/20), --- So. 3d ----, 2020 WL 1675992, *reh'g denied*, 2019-00795 (La. 7/9/20), 298 So. 3d 168 (mem). In *Blair*, like in the present case, Bain opined:

> [A] low speed rear-end motor vehicle collision [ ] subjected [plaintiff] to minimal forces and accelerations. He was not subjected to forces and acceleration that would cause serious or long-lasting injuries. Diagnoses and subsequent investigations and treatments related to [Plaintiff's] degenerative cervical spine pathologies are not causally related to the subject event.

*Blair v. Coney*, 2020 WL 1675992, at *2.

In upholding the district court's exclusion of Bain, the court reviewed other state and federal court cases in Louisiana which had ruled on similar challenges to Bain's expert testimony.

> The Third Circuit Court of Appeal addressed the admissibility of Dr. Bain's testimony in *Godchaux v. Peerless Ins. Co.*, 2013-1083 (La. App. 3 Cir. 6/4/14), 140 So. 3d 817, a case wherein plaintiffs argued that the jury failed to provide sufficient damage awards and that such failure was related to the district court's error in admitting Dr. Bain's testimony. *Id*. at 1. In *Godchaux*, Dr. Bain was introduced as an expert in biomechanics and injury causation analysis. *Id*. at 3. The court noted that Dr. Bain never spoke to plaintiff, never contacted plaintiff's physicians, never visited the accident scene, never inspected plaintiff's vehicle, never spoke with a damage appraiser, did not know the body position of the plaintiff at the time of the accident, did not consider the angle of impact or the dimensions of the vehicular head rack that struck plaintiff's vehicle, and failed to conduct an analysis of force using the same type of vehicle involved in the collision. *Id*. at 8.

> The court of appeal in Godchaux reversed the district court's ruling admitting Dr. Bain's testimony, finding that although Dr. Bain likely qualified as an expert in biomechanics and injury causation analysis,

his opinions and methods were nonetheless unreliable. *Id*. at 4. Considering that Dr. Bain did not recreate the actual accident and only relied on a crash analysis of a different make and model to assess the force asserted on the plaintiff's vehicle, the Godchaux court concluded Dr. Bain's findings were "inherently suspect" without evidence of support from the scientific community. *Id*. at 8. Since Dr. Bain did not testify as to the reliability or potential errors in the crash analysis, the court found the comparative data on which he relied was also "inherently suspect." *Id*. Moreover, the court held that Dr. Bain's testimony did not assist the jury in determining a fact in issue, reasoning that force-of-impact testimony cannot be used to disprove causation. See *id*. at 9.10 Accordingly, the court of appeal in *Godchaux* found that the trial court abused its discretion in permitting Dr. Bain to testify. *Id*. at 10. A writ application was filed with this Court, which we denied. *Godchaux v. Peerless Ins. Co*., 2014-1411 (La. 10/3/14), 149 So. 3d 801.

The federal district courts in Louisiana have both excluded and admitted Dr. Bain's testimony on force of impact and injury causation. See e.g., *Parker v. NGM Ins. Co*., 2016 WL 3546325 (E.D. La. 2016) (finding Dr. Bain was qualified to testify as to accident reconstruction but that his methods were unreliable and further finding Dr. Bain was not qualified to testify as to medical causation because he was not board certified in a relevant specialty of medicine); *Breaud v. Werner*, 2006 WL 8432363 (M.D. La. 2006) (finding Dr. Bain's testimony was based on insufficient facts where Dr. Bain himself admitted there were dents in the vehicle he could not see in the black and white photographs he reviewed); cf. *Burgo v. Davis*, 2016 WL 3257589 (E.D. La. 2016) (expressing doubt as to whether Dr. Bain is qualified to opine on the relationship of the seriousness of the impact and plaintiff's spinal injuries in light of his lack of specialized expertise but nevertheless finding "[t]he fact Dr. Bain is not a neurologist, neurosurgeon, or orthopedic surgeon ultimately relates to his credibility, not the admissibility of his testimony."); *White v. Great West Cas. Co*., 2009 WL 2747795 (W.D. La. 2009) (also finding Dr. Bain's medical experience relates to admissibility rather than credibility and concluding Dr. Bain's opinions were "sufficiently sound and based on facts sufficient to satisfy [FED. R. EVID. 702]'s reliability requirement."). Ultimately, the decision in each case is fact specific, turning on the areas of expertise in which Dr. Bain is attempting to testify, the evidence on which he relied, and the specific methodology employed by Dr. Bain in reaching his conclusions.

*Blair v. Coney*, 2020 WL 1675992, at \*5–6.

      In his opposition, Defendant points to cases where *Daubert* challenges to Bain's opinions were rejected and Bain was allowed to testify without limitation. (Doc. 71 at 5, 11–12; Doc. 71-1 at 79 *et seq*.) While both sets of cases are instructive, they are certainly not determinative. The question for this Court is whether Bain's opinions *in this case* have sufficient reliability to pass *Daubert* muster. With respect to his opinions regarding injury severity and injury causation, Plaintiff has raised serious and legitimate concerns. However, the Court is unable based on the record before it to grant or deny the motion. Therefore, the Court will set a hearing to receive additional evidence from both Plaintiff and Defendants that informs the question of the reliability of Bain's opinions regarding injury severity (or lack thereof) and injury causation. The Court expects, at a minimum, to hear testimony from Dr. Bain on these issues. Plaintiff will be allowed to offer evidence relevant to these issues.

## V.    CONCLUSION

      For the foregoing reasons, the Court denies in part and defers in part Plaintiff's the *Daubert Motion in Limine to Exclude Dr. Charles Bain* (Doc. 67).  The Court will issue an order setting the hearing date.

      Signed in Baton Rouge, Louisiana, on <u>September 17, 2021</u>.

                                    _____

                                    **JUDGE JOHN W. deGRAVELLES**
                                    **UNITED STATES DISTRICT COURT**
                                    **MIDDLE DISTRICT OF LOUISIANA**